UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| ACE AMERICAN INSURANCE COMPANY | § § § | |
| *Plaintiff,* | § § | |
| v. | § § | Civil Action No. _____ |
| M-I, L.L.C. AND M-I SWACO, INC. | § § § | |
| *Defendants.* | § § | |

## ACE AMERICAN INSURANCE COMPANY'S
## COMPLAINT FOR DECLARATORY JUDGMENT

TO THE HONORABLE UNITED STATES DISTRICT JUDGE:

This Complaint for Declaratory Judgment is filed by ACE American Insurance Company against M-I, L.L.C., and M-I SWACO, Inc., pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2201-2202, and Rule 57 of the Federal Rules of Civil Procedure, for a declaration of rights and obligations in an actual case or controversy involving certain insurance policies issued by ACE American Insurance Company.

### I.    INTRODUCTION

1.1    This coverage dispute arises out of two insurance policies, Policy No. HDO G23751112 (hereinafter the "ACE CGL Policy") and Policy No. WLR C 44367087 (hereinafter the "ACE WC/EL Policy"), issued by ACE American Insurance Company ("ACE") to M-I, L.L.C. and M-I SWACO, Inc. (collectively "M-I"). M-I seeks coverage under the policies for claims made against M-I and BP Exploration and Production, Inc. (hereinafter "BP") in a personal injury lawsuit filed by M-I's former employee, Charles Hernandez, in Case No. 62,268; *Charles Hernandez v. M-I SWACO, Inc.; M-I, LLC; and*

*BP Exploration and Production, Inc.* in the County Civil Court at Law No. 1 of Galveston County, Texas (the "*Hernandez* lawsuit"). In the *Hernandez* lawsuit, Mr. Hernandez contends that he was a Jones Act seaman who allegedly suffered an injury during the course and scope of his employment with M-I and in his capacity as a borrowed servant of BP. Pl.'s 2nd. Am. Comp. at 2, ¶ 8. Mr. Hernandez alleges that on October 23, 2009, he injured his neck and lower back while performing routine maintenance of M-I's equipment aboard an offshore production, drilling and quarters facility owned, operated, and managed by BP, which facility is known as the *Thunder Horse*. *Id.* at 3, ¶11. The *Thunder Horse* was affixed to the seabed of the outer Continental Shelf off the coast of Louisiana at the time of Mr. Hernandez's alleged injury. Mr. Hernandez has brought claims against M-I and BP for unseaworthiness, maintenance and cure, negligence and gross negligence under both the Jones Act and state law, as well as claims against BP arising under the Louisiana Civil Code and premises liability. *Id.* at 3-4, ¶12-14.

      1.2    From the beginning of the *Hernandez* lawsuit, a dispute existed concerning whether Mr. Hernandez was employed as a seaman under the Jones Act and whether the *Thunder Horse* upon which Mr. Hernandez was working at the time of his alleged injury constituted a Jones Act vessel. BP filed its original answer generally denying all of Mr. Hernandez's allegations on March 23, 2010.[1] M-I engaged the law firm of Gardere, Wynne & Sewell, LLP ("Gardere"), who filed an answer on M-I's behalf on March 24, 2010, generally denying Mr. Hernandez's claims and asserting the affirmative defense

---

[1]Kenneth L. George of Schwartz, Junell, Greenberg & Oathout, LLP first appeared on BP's behalf.

2

that Mr. Hernandez was not a Jones Act seaman because the *Thunder Horse* was not a Jones Act vessel. As such, M-I contended that the claims against M-I in the *Hernandez* lawsuit were barred by the Longshore & Harbor Workers' Compensation Act ("LHWCA").

1.3     Approximately one week later, on April 1, 2010, BP issued a letter to M-I formally demanding that M-I defend, indemnify and hold BP harmless from Mr. Hernandez's claims in the underlying action pursuant the terms of Section 19.1 of the "Contract for Gulf of Mexico Strategic Performance Unit Offshore Well Services between BP Exploration and Production, Inc. and M-I L.L.C" (hereinafter the "BP/M-I Contract"). In addition to enumerated duties on the part of M-I to defend BP, Section 19.1 of the BP/M-I Contract provides that M-I will provide liability insurance, including contractual liability coverage, in favor of BP and name BP as an additional insured on specified policies obtained by M-I. *See id.* at Sections 20.1 and 20.2  M-I voluntarily accepted BP's tender for contractual defense and indemnity and assumed the defense of BP, according to its correspondence from Greg Attrep, without notifying ACE.[2]

1.4     M-I first notified ACE of the *Hernandez* lawsuit on August 25, 2010, seeking coverage only under the ACE WC/EL Policy. This late notice occurred ten (10) months after Mr. Hernandez claims that he was injured on October 23, 2009, eight (8) months after the *Hernandez* lawsuit was first filed on January 29, 2010, nearly five (5) months after M-I filed its original answer on March 24, 2010, and nearly five (5) months from the date M-I received BP's tender for defense and indemnity dated April 1, 2010.

---

[2] M-I's acceptance of BP's tender for defense and indemnity is undated.

M-I also did not then notify ACE of its prior acceptance of BP's tender despite the fact the Gardere firm filed a motion to substitute as BP's counsel on May 17, 2010.[3] The Gardere firm began representing both M-I and BP upon the trial court's order granting substitution of counsel dated June 2, 2010. M-I did not request that ACE provide it with a defense, and the pleadings in the *Hernandez* lawsuit reveal that M-I retained counsel and defended the claim well before informing ACE of the suit.

1.5    ACE issued a reservation of rights letter to M-I on September 29, 2010, stating that coverage may not exist for M-I under the ACE WC/EL Policy for the Jones Act claims asserted by Mr. Hernandez if it is determined that the *Thunder Horse* is not a vessel. ACE also informed M-I that Exclusion 1 of the ACE WC/EL Policy operates to exclude coverage for M-I's assumption of liability by accepting BP's tender for contractual defense and indemnity. ACE further informed M-I that M-I's unilateral decision to retain counsel without advising ACE is a violation of "Part Four – Your Duties if Injury Occurs" of the ACE WC/EL Policy.

1.6    After M-I's receipt of ACE's September 29, 2010 reservation of rights letter, M-I, apparently on its own behalf and on behalf of BP, continued defending the *Hernandez* lawsuit with the Gardere law firm as their counsel. M-I and BP filed a motion for partial summary judgment on October 27, 2010 on the grounds that Mr. Hernandez was not a Jones Act seaman and the *Thunder Horse* was not a Jones Act vessel but rather a work platform as a matter of law.

---

[3]M-I first provided notice of its acceptance of BP's tender for contractual defense and indemnity after January 14, 2011.

1.7    ACE issued a reservation of rights letter to M-I regarding ACE's coverage position on the ACE CGL Policy on January 14, 2011, even though M-I had not tendered the *Hernandez* lawsuit to ACE seeking coverage under the ACE CGL Policy for the allegations against M-I or for the defense and indemnity of BP that M-I had accepted. The reservation of rights letter was issued in response to a phone call between M-I and ESIS, Inc., the third-party claims administrator, wherein M-I advised ESIS that BP may be asserting a claim against M-I. In its reservation of rights letter, ACE sought clarification from M-I concerning the entities on whose behalf M-I sought coverage from ACE. M-I did not respond to this inquiry. ACE relayed that no coverage existed for M-I under the ACE CGL Policy due to the application of the Workers' Compensation and Similar Laws Exclusion and the Employer's Liability Exclusion.  ACE further stated that in the event a claim for coverage under the ACE CGL Policy were presented for the allegations against BP, at least three exclusions in the ACE CGL Policy potentially applied to bar coverage for the claims that were asserted by Mr. Hernandez against BP. These exclusions were: the Watercraft Exclusion, the Workers' Compensation and Similar Laws Exclusion, and the Employer's Liability Exclusion. Additionally, ACE stated that M-I may have abrogated coverage by its voluntary assumption of liabilities and by making payments in conjunction with defending the claims asserted by Mr. Hernandez without first receiving ACE's consent or notice to ACE, in contravention of Condition 2.d.

1.8    On February 8, 2011 and on February 17, 2011, the Gardere law firm, defense counsel for M-I and BP, requested settlement authority from ACE. On February

5

25, 2011, ACE responded to the defense counsel's correspondence.  ACE stated it was premature for ACE to respond with specific authority because the Louisiana Oilfield Indemnity Act (LOIA) would preclude coverage for the claims asserted against BP under the ACE CGL Policy should it be determined that the *Thunder Horse* is not a vessel. On March 1, 2011, mediator Ron White issued his mediator's proposal. On March 7, 2011, M-I reiterated its position to ACE and further requested that ACE consider the mediator's proposal and M-I's proposal of a temporary funding agreement.

1.9    On March 25, 2011, ACE responded to the coverage issues raised and stated that ACE was amenable to a temporary funding agreement with certain caveats. ACE maintained its position that no coverage exists for the claims asserted against BP in the *Hernandez* lawsuit under the ACE WC/EL Policy and the ACE CGL Policy. Specifically, ACE reiterated that M-I's defense, indemnity, waiver of subrogation, and additional insured obligations under the BP/M-I Contract are void under the LOIA.  ACE stated that the BP/M-I Contract is not a maritime contract, but rather, it is governed by Louisiana law through application of the Outer Continental Shelf Lands Act ("OCSLA"). ACE further restated its position that no coverage exists for M-I under the ACE CGL Policy for the *Hernandez* lawsuit. With respect the temporary funding proposal and alternative dispute resolution process, ACE stated that it was agreeable to funding and arbitration with certain conditions.

1.10    On April 1, 2011, the Galveston Civil County Court No. 1 adjudicated that the *Thunder Horse* is not a vessel and that Mr. Hernandez is not a Jones Act seaman as a matter of law and agreed to dismiss M-I as a defendant. Consequently, no coverage exists

for M-I nor for M-I's assumed liability for BP under either the ACE WC/EL Policy or ACE CGL Policy with respect to the claims asserted by Mr. Hernandez in the *Hernandez* lawsuit.

1.11   On April 11, 2011, M-I entered into a settlement of Mr. Hernandez's claims in the *Hernandez* lawsuit. M-I contends that it has incurred significant liabilities in connection with the *Hernandez* lawsuit, including the amount paid in settlement of Mr. Hernandez's claims in the *Hernandez* lawsuit and defense costs and expenses in its own defense and in connection with its agreement to undertake the defense and indemnity of BP. M-I has declined to accept a temporary funding agreement and alternative dispute resolution on terms that would permit an arbitrator to properly allocate the settlement and defense costs and expenses to any coverages under the ACE policies.

1.12   ACE is seeking a judgment declaring that no coverage exists for M-I under the ACE GL Policy or the ACE WC/EL Policy with respect to any claims asserted against M-I in the *Hernandez* lawsuit and with respect to any claims asserted against BP in the *Hernandez* lawsuit for which M-I has agreed to defend and indemnify BP.

## II.    PARTIES

2.1   Plaintiff ACE American Insurance Company is a Pennsylvania corporation with its headquarters at 436 Walnut St., Philadelphia, PA 19106-3703.

2.2   Defendant M-I, L.L.C. is a Delaware limited liability company with its principal place of business in Houston, Harris County, Texas. It can be served through its registered agent: Capitol Corporate Services, Inc., 800 Brazos, Suite 400, Austin, Texas 78701.

2.3.    Defendant M-I SWACO, INC. was named as a defendant in the *Hernandez* lawsuit. M-I answered in that suit as M-I L.L.C. d/b/a M-I Swaco. As such, its citizenship is the same as M-I, L.L.C. and it can be served through the registered agent, Capitol Corporate Services, Inc., 800 Brazos, Suite 400, Austin, Texas 78701.

### III.   JURISDICTION AND VENUE

3.1    This Court has jurisdiction of this controversy under 28 U.S.C. § 1332 (a) in that the dispute is between citizens of different states and the amount in controversy exceeds the sum or value of $75,000.00 exclusive of interest and costs. Alternatively, this Court has jurisdiction of this controversy under the provisions of the OCSLA, 43 U.S.C. § 1349, as it involves a controversy arising out of an operation conducted on the outer Continental Shelf which involved exploration, development or production of the minerals of the outer Continental Shelf.

3.2    Venue is proper in this district pursuant to 28 U.S.C. § 1391 because this is a judicial district in which the Defendants are subject to personal jurisdiction and because the policy of insurance was issued and delivered to M-I in Houston, Texas.

### IV.   THE ACE WC/EL POLICY

4.1    The ACE WC/EL Policy issued to M-I provides a policy period of April 1, 2009 through April 1, 2010. The coverage afforded under the ACE WC/EL Policy is subject to certain terms, conditions, limitations and exclusions.

4.2     The trial court in the *Hernandez* lawsuit adjudicated on April 1, 2011, that the *Thunder Horse* is not a Jones Act vessel, and correspondingly Mr. Hernandez was not a Jones Act seaman at the time of his alleged accident. Therefore, the trial court agreed to dismiss M-I from the *Hernandez* lawsuit. As a consequence of that decision, ACE has no obligations under the ACE WC/EL Policy with respect to the allegations against M-I by Mr. Hernandez in the *Hernandez* lawsuit.

4.3     As stated herein*,* M-I accepted BP's tender for contractual defense and indemnity pursuant to Section 19.1 of BP/M-I Contract. Exclusion 1 of the ACE WC/EL Policy excludes coverage for liability assumed by M-I under the terms of a contract:

> This insurance does not cover:

> 1.   liability assumed under a contract. This exclusion does not apply to a warranty that your work will be done in a workman like manner . . . .

Thus, the insurance provided by the ACE WC/EL Policy does not cover the liability assumed by M-I under the terms of the BP/M-I Contract, including the claim tendered to M-I from BP.

4.4     It follows that any attorneys' fees and costs incurred in connection with M-I's defense of BP against Mr. Hernandez's claims are not covered under the ACE WC/EL Policy.  Any such fees and costs incurred transcend ACE's duty to defend and therefore are not covered under the ACE WC/EL Policy.

4.5     In addition, "Part Four – Your Duties if Injury Occurs" of the ACE WC/EL Policy applies to this case.  This provision details M-I's obligation to ACE in the event of an injury.  This provision provides as follows:

9

Tell us <u>at once</u> if injury occurs that may be covered by this policy. Your other duties are listed here.

. . .

3.  <u>Promptly</u> give us all notices, demands and legal papers related to the injury, claim, proceeding or suit.

4.  Cooperate with us and assist us, as we may request, in the investigation, settlement or defense of any claim, proceeding or suit.

. . .

6.  Do not voluntarily make payments, assume obligations or incur expenses, except at your own cost.

(Emphasis added).

4.6    In contravention to the aforementioned provision, M-I first notified ACE of the *Hernandez* lawsuit on August 25, 2010, more than ten (10) months after Hernandez claims that he was injured on October 23, 2009, eight (8) months after the *Hernandez* lawsuit was first filed on January 29, 2010, nearly five (5) months after M-I filed its original answer on March 24, 2010, and nearly five (5) months from the date M-I received BP's tender for defense and indemnity dated April 1, 2010.  M-I never asked ACE to defend M-I in the *Hernandez* lawsuit. M-I hired its own counsel (Gardere) and made strategic decisions in the handling of the litigation without informing or consulting with ACE and that have prejudiced ACE. Accordingly, ACE has no obligation to undertake the defense or pay defense costs unilaterally incurred by M-I under the terms of the ACE WC/EL Policy.

4.7    There is no coverage under the ACE WC/EL Policy for the defense and indemnity that M-I has undertaken on behalf of BP with respect to the allegations in the *Hernandez* lawsuit that Mr. Hernandez was a borrowed servant of BP. The ACE WC/EL

Policy delineates who is insured under the terms of that policy. The ACE WC/EL Policy provides, in pertinent part, as follows: "You are insured if you [M-I, L.L.C.] are an employer named in Item 1 of the Information Page. . . ." As BP is not listed in Item 1 of the Information Page, BP is not an insured under the ACE WC/EL Policy. M-I has taken the position in the *Hernandez* lawsuit that Mr. Hernandez was not a borrowed servant of BP.  Consequently, there is no coverage afforded for the defense and indemnity that M-I has undertaken of the allegations against BP under the Alternate Employer Endorsement" of the ACE WC/EL Policy, as M-I has not shown that the claims made in the *Hernandez* lawsuit fall within the scope of the insuring agreement of the "Alternate Employer Endorsement:"

> This endorsement applies only with respect to bodily injury to your [M-I's] employees while in the course of special or temporary employment by the alternate employer in the state named in Item 2 of the Schedule. . . .

4.8     In the event that M-I now asserts that BP is Mr. Hernandez's "alternate employer" and seeks coverage on the ACE WC/EL Policy pursuant to Paragraph 20.2(a) of the BP/M-I Contract, that claim is void pursuant to the LOIA, and any assumption of BP's liability by M-I without the consent of ACE is in violation of Duty 6 of the ACE WC/EL Policy set forth in Paragraph 4.5 above.

## V.    THE ACE GL POLICY

5.1     The ACE CGL Policy issued to M-I provides a policy period of April 1, 2009 through April 1, 2010.  The coverage afforded under the ACE CGL Policy is subject to certain terms, conditions, limitations and exclusions.

**A.**     **The Workers' Compensation And Similar Laws & Employer's Liability Exclusions**

5.2     It is undisputed that Mr. Hernandez was an employee of M-I at the time of his alleged accident. Mr. Hernandez also claims to have been the borrowed servant of BP. Consequently, Mr. Hernandez's employment with M-I and his alleged borrowed servant status with BP directly implicate the Workers' Compensation and Similar Laws exclusion. The Workers' Compensation and Similar Laws exclusion states:

This insurance does not apply to: . . .

**d.**     **Workers' Compensation And Similar Laws**
Any obligation of the insured under a workers' compensation, disability benefits or unemployment compensation law or any similar law.

This exclusion is directly applicable to M-I, and no coverage exists under the ACE CGL Policy for the claims asserted by Mr. Hernandez against his employer, M-I, or for the claims against BP as a borrowed servant for which M-I asserts additional insured status for BP on the ACE CGL Policy.

5.3     Additionally, the Employer's Liability exclusion of the ACE CGL Policy applies.  This exclusion states:

This insurance does not apply to: . . .

**e.**     **Employer's Liability**

"Bodily injury" to:

> (1)    An "employee" of the insured arising out of and in the course of:
>
>> (a)    Employment by the insured; or
>>
>> (b)    Performing duties related to the conduct of the insured's business; or
>
> (2)    The spouse, child, parent, brother or sister of that "employee" as a consequence of Paragraph (1) above.
>
> This exclusion applies whether the insured may be liable as an employer or in any other capacity and to any obligation to share damages with or repay someone else who must pay damages because of the injury.
>
> This exclusion does not apply to liability assumed by the insured under an "insured contract".

This exclusion is directly applicable to M-I and to M-I's assertion of additional insured status for BP with respect to the borrowed servant allegations in the *Hernandez* lawsuit, and there is no coverage under the ACE CGL Policy for the claims asserted by Mr. Hernandez in the *Hernandez* lawsuit against his employer, M-I, or for M-I's assertion of additional insured status for BP with respect to claims by Mr. Hernandez against BP as his borrowing employer.

**B.    Section IV – Commercial General Liability Conditions**

5.4    In addition to the above-referenced exclusions, M-I has violated multiple provisions of Condition 2 (Duties In The Event Of Occurrence, Offense, Claim Or Suit) of the Commercial General Liability Conditions of the ACE CGL Policy.  This provision provides as follows:

> a.    You must see to it that we are notified as soon as practicable of an "occurrence" or offense which may result in a claim.  To the extent possible, notice should include:

13

        (1)     How, when and where the "occurrence" or offense took place;

        (2)     The names and addresses of any injured persons and witnesses; and

        (3)     The nature and location of any injury or damage arising out of the "occurrence" or offense.

Notice of an "occurrence" or offense is not notice of a claim.

**b.**     If a claim is received by any insured, you must:

        (1)     Immediately record the specifics of the claim and the date received; and

        (2)     Notify us as soon as practicable.

You must see to it that we receive written notice of the claim as soon as practicable.

**c.**     You and any other involved insured must:

        (1)     Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the claim or a "suit";

        (2)     Authorize us to obtain records and other information;

        (3)     Cooperate with us in the investigation or settlement of the claim or defense against the "suit"; and

        (4)     Assist us, upon our request, in the enforcement of any right against any person or organization which may be liable to the insured because of injury or damage to which this insurance may also apply.

**d.**     No insured will, except at the insured's own cost, voluntarily make a payment, assume any obligation, or incur any expense, other than for first aid, without our consent.

5.5     Condition 2.d. of the ACE CGL Policy prohibits an insured from voluntarily making payments, assuming obligations, or incurring expenses, except for first aid, without ACE's consent. This policy provision expressly states that the insured is not to "voluntarily make payments, assume obligations or incur expenses, except at your

own cost." *Id.* M-I violated this provision when it voluntary assumed the defense and indemnity of BP. Thus, the insurance provided by the ACE CGL Policy does not cover the liability assumed by M-I under the terms of the BP/M-I Contract, including the claim tendered to M-I by BP.[4]

5.6    Further, no coverage exists under the ACE CGL Policy for BP's claims for defense and indemnity from M-I because the defense, indemnity, and additional insured provisions of the BP/M-I Contract are void as a matter of law. The alleged incident at issue occurred on the *Thunder Horse,* located within the outer Continental Shelf in Mississippi Canyon Block 778, a federal mineral lease block located off the coast of Louisiana. As the trial court in the *Hernandez* lawsuit recently held that the *Thunder Horse* is not a Jones Act vessel, Louisiana law applies as surrogate federal law through the application of the OCSLA.

5.7    The LOIA declares null and void and against the public policy of the State of Louisiana any provision in any agreement which requires defense, indemnification, or insurance coverage for bodily injury to person, where there is negligence or fault on the part of the indemnitee. The LOIA is an imperative law that nullifies any agreement in contravention of its declared public policy. Consequently, the defense, indemnity, and additional insured provisions of the BP/M-I Contract are void as a matter of law by operation of the LOIA. Accordingly, M-I's voluntary assumption of BP's tender of its

---

[4]ACE does not assert the voluntary payments clause of the Policy with respect to M-I's agreement with Mr. Hernandez for the settlement of Mr. Hernandez' claims against M-I and BP; however, ACE has no liability for any payments made by M-I in connection with the defense or indemnification of BP, including the settlement of Mr. Hernandez's claims against BP or the defense of BP in the *Hernandez* lawsuit, because of the voluntary assumption of BP's tender of defense and indemnity without the consent of ACE.

defense and indemnity is void, and there is no coverage under the ACE CGL Policy for any obligations undertaken by M-I with respect to the defense or indemnification of BP in connection with the *Hernandez* lawsuit.

5.8     M-I further violated Condition 2.d. of the ACE CGL Policy by retaining counsel and incurring expenses without first receiving ACE's consent. The pleadings in the *Hernandez* lawsuit plainly reveal that M-I retained counsel and defended this claim well before informing ACE of the claim. The action taken by M-I in unilaterally retaining counsel without advising ACE is a violation of this policy provision.

**C.     No Medical Payments Coverage**

5.9     The ACE CGL Policy does not afford coverage for Coverage C medical Payments. *See* Endorsement #25.  To the extent that any medical payments were made on behalf of M-I to Mr. Hernandez, ACE has no obligation to pay these expenses under the ACE CGL Policy.

## VI.   DECLARATORY JUDGMENT

6.1     The allegations contained in Paragraphs 1.1–5.9 are incorporated by reference herein.

6.2     The notice provided or attempted to be provided by M-I on August 25, 2010, presents an actual and existing controversy between ACE and M-I with respect to the existence and scope of the obligations of ACE, if any, in connection with M-I's liabilities and undertakings emanating from the *Hernandez* lawsuit. The ACE policies, however, do not respond to any claims asserted against M-I in the *Hernandez* lawsuit, to the defense and indemnity undertaken by M-I in connection with the claims asserted

16

against BP in the *Hernandez* lawsuit, or for the settlement entered into by M-I with Mr. Hernandez.

6.3     Pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2201-2202, ACE seeks a judicial declaration of its rights and duties to M-I, if any, under the ACE policies in connection with M-I's liabilities and undertakings related to the *Hernandez* lawsuit. The Court's making such a declaration will confer certainty on the parties with respect to their rights and obligations under the ACE policies, and therefore will serve the interests of justice.

6.4     ACE hereby seeks the following declarations:

A.     There is no coverage for M-I under the ACE WC/EL (Policy No. WLR C 44367087) for the claims asserted by Mr. Charles Hernandez in Case No. 62,268; *Charles Hernandez v. M-I SWACO, Inc.; M-I, LLC; and BP Exploration and Production, Inc.* in the County Civil Court at Law No. 1 of Galveston County, Texas, and for the settlement of those claims.

B.     There is no coverage for M-I under the ACE WC/EL (Policy No. WLR C 44367087) for M-I's defense and indemnification of BP with respect to the claims asserted by Mr. Charles Hernandez in Case No. 62,268; *Charles Hernandez v. M-I SWACO, Inc.; M-I, LLC; and BP Exploration and Production, Inc.* in the County Civil Court at Law No. 1 of Galveston County, Texas, and for the settlement of those claims.

C.     There is no coverage for M-I under the ACE CGL Policy (Policy No. HDO G23751112) for the claims asserted by Mr. Charles Hernandez, in Case No. 62,268; *Charles Hernandez v. M-I SWACO, Inc.; M-I, LLC; and BP Exploration and Production, Inc.* in the County Civil Court at Law No. 1 of Galveston County, Texas, and for the settlement of those claims.

D.      There is no coverage for M-I under the ACE CGL Policy (Policy No. HDO G23751112) for M-I's defense and indemnification of BP with respect to the claims asserted by Mr. Charles Hernandez, in Case No. 62,268; *Charles Hernandez v. M-I SWACO, Inc.; M-I, LLC; and BP Exploration and Production, Inc.* in the County Civil Court at Law No. 1 of Galveston County, Texas, and for the settlement of those claims.

E.      Louisiana law applies as surrogate federal law and governs the contractual obligations for the work performed by M-I on the *Thunder Horse* pursuant to the "Contract for Gulf of Mexico Strategic Performance Unit Offshore Well Services between BP Exploration and Production, Inc. and M-I, L.L.C." through the Outer Continental Shelf Lands Act.

F.      The work performed by M-I on the *Thunder Horse* pursuant to the "Contract for Gulf of Mexico Strategic Performance Unit Offshore Well Services between BP Exploration and Production, Inc. and M-I, L.L.C." is subject to the Louisiana Oilfield Indemnity Act.

G.      The Louisiana Oilfield Indemnity Act is imperative, and it cannot be waived by agreement between M-I and BP.

H.      The Louisiana Oilfield Indemnity Act nullifies and voids M-I's contractual agreements with BP with respect to the *Hernandez* lawsuit that provide for defense, indemnity, naming of BP as an additional insured, and the providing of an Alternate Employer Endorsement in favor of BP.

I.      ACE has no duty to defend M-I for the claims asserted against it by Mr. Charles Hernandez, in Case No. 62,268; *Charles Hernandez v. M-I SWACO, Inc.; M-I, LLC; and BP Exploration and Production, Inc.* in the County Civil Court at Law No. 1 of Galveston County, Texas, under the ACE CGL Policy (Policy No. HDO G23751112).

J.      ACE has no duty to defend M-I before tender of its defense to ACE or after dismissal of M-I for the claims asserted against M-I by Mr. Charles Hernandez, in Case No. 62,268; *Charles Hernandez v. M-I SWACO, Inc.; M-I, LLC; and BP Exploration and Production, Inc.* in the County Civil Court at

Law No. 1 of Galveston County, Texas, under the ACE
WC/EL Policy (Policy No. WLR C 44367087).

K.     ACE has no duty to reimburse M-I for the defense or
indemnity of BP for the claims asserted against BP by Mr.
Charles Hernandez, in Case No. 62,268; *Charles Hernandez
v. M-I SWACO, Inc.; M-I, LLC; and BP Exploration and
Production, Inc.* in the County Civil Court at Law No. 1 of
Galveston County, Texas, under the ACE WC/EL Policy
(Policy No. WLR C 44367087).

L.     ACE has no duty to reimburse M-I for the defense or
indemnity of BP for the claims asserted against BP by Mr.
Charles Hernandez, in Case No. 62,268; *Charles Hernandez
v. M-I SWACO, Inc.; M-I, LLC; and BP Exploration and
Production, Inc.* in the County Civil Court at Law No. 1 of
Galveston County, Texas, under the ACE CGL Policy (Policy
No. HDO G23751112).

M.     ACE has no obligation to pay any expenses under Coverage
C – Medical Payment of the ACE CGL Policy.

6.5    ACE pleads all other conditions, terms, limitations, definitions and
exclusions contained in the ACE Policy, which may be found to be applicable, and ACE
specifically reserves the right to amend this Complaint for Declaratory Judgment as
additional and/or more specific information becomes available.

## VII.  ATTORNEYS' FEES

7.1    Pursuant to 28 U.S.C. § 2202, ACE requests recovery of its attorneys' fees
and costs.

## VIII.  PRAYER

8.1    ACE American Insurance Company prays for declaratory judgment in its
favor confirming that no coverage exists under the ACE WC/EL Policy identified as
Policy No. WLR C 44367087 and the ACE CGL Policy identified as Policy No. HDO G

19

24940354 for any claims against M-I, L.L.C., and M-I SWACO, Inc.; for the defense and indemnification by M-I, L.L.C., and M-I SWACO, Inc., of BP Exploration and Production, Inc.; and for the settlement of Mr. Hernandez's claims entered into by M-I; in connection with Case No. 62,268; *Charles Hernandez v. M-I SWACO, Inc.; M-I, LLC; and BP Exploration and Production, Inc.,* in the County Civil Court at Law No. 1 of Galveston County, Texas; and ACE American Insurance Company further prays for all such other and further relief as equity and the justice of this cause may permit.

Respectfully submitted,

BROWN SIMS, PC

By:   /s/ Kenneth G. Engerrand
     Kenneth G. Engerrand
     Texas Bar No. 06619500
     Southern District I.D. 2078
     Charles Clayton Conrad
     Texas Bar No. 24040721
     Southern District I.D. 37220
     1177 West Loop South, Tenth Floor
     Houston, Texas 77027-9007
     Tel: (713) 629-1580
     Fax: (713) 629-5027

ATTORNEYS FOR PLAINTIFF
ACE AMERICAN INSURANCE COMPANY