| UNITED STATES DISTRICT COURT | SOUTHERN DISTRICT OF TEXAS |
|---|---|

| | | |
|---|---|---|
| ACE American Insurance Company, | § § § § § § § § § | |
| Plaintiff, | | |
| versus | | Civil Action H-11-1380 |
| M-I, LLC, et al., | | |
| Defendants. | | |

# Opinion on Partial Summary Judgment

1. *Introduction.*

   An insurance carrier says that the indemnity provision in the insured's service contract is unenforceable because the contract is not maritime and Louisiana law voiding indemnification applies. The insured says that maritime or Texas law applies and the indemnity is valid. The carrier will prevail.

2. *Background.*

   For more than a decade, M-I has worked on offshore wells for BP by supplying drilling mud and tools, doing environmental compliance and monitoring, and managing drilling waste. In 2009, M-I and BP signed a new master contract for work in the Gulf of Mexico. In October of 2009, an M-I employee working on BP's Thunder Horse rig injured himself while cleaning an effluent tank.

   In January of 2010, the worker sued BP and M-I. Because the master contract had an indemnity provision, M-I agreed to indemnify BP and took over its defense. Since Thunder Horse is not a vessel, the worker's claims against M-I were dismissed, and M-I settled the claims against BP. M-I then asked its insurer, ACE American Insurance Company, to cover the defense and settlement expenses. ACE had told M-I that coverage may not exist, it may not cover the assumption of BP's defense, and that M-I had violated the policy.

In April of 2011, ACE sued for a declaratory judgment that it does not owe M-I coverage payments for the Thunder Horse suit. Both parties have moved to resolve the issue of whether Louisiana law applies to the contract, which would void the indemnity provision.

3.   *Situs.*

Under the Outer Continental Shelf Lands Act, the adjacent state's law applies if work is done on stationary platforms in the outer continental shelf, treating them as artificial islands.[1] M-I says that the indemnity dispute did not arise from that location because the master contract is governed by maritime or Texas law, 70% or more of M-I's revenues from the BP contract come from work on ships, no formal work orders were made, and the contract terms show that the parties wanted only the master contract to govern the location.

ACE says that despite the absence of work orders, the dispute concerns a location that is not a vessel. The master contract was incomplete. Payment would only be made for specific work. M-I created service tickets and timesheets to bill BP for each job, the terms of the contract do not show an intent to have only the master contract govern the island site, and Hernandez was sent to work on a site covered by federal law adopting state law.

If the contract is governed by the Act, then the substantive law of Louisiana supercedes the choice-of-law provision.[2]

M-I says that because there was no work order, the court should ignore the work location and only look at the blanket contract and the revenue numbers. A blanket service contract does not list the specific locations because the parties do not know where services will be needed. That contract is not strictly maritime or non-maritime. Determining the location does not depend on the existence of the work order; the specific work may be maritime or non-maritime, depending on its nature and location of the work.[3]

M-I and BP may not have used written orders, but the master contract allows oral requests followed by written confirmation. Each time Hernandez went to a BP site, he

---

[1] 43 U.S.C. § 1333(a)(2)(A) (2006).

[2] *Union Tex. Petroleum Corp. v. PLT Eng'g, Inc.*, 895 F.2d 1043, 1050 (5th Cir. 1990).

[3] *Grand Isle Shipyard, Inc., v. Seacor Marine, LLC*, 589 F.3d 778, 787 n.6 (5th Cir. 2009); *Hale v. Co-Mar Offshore Corp.*, 588 F. Supp. 1212, 1215 (W.D. La. 1984).

completed a time-sheet with a description of his work. Each of his trips was assigned a service ticket number. BP would not have paid M-I without the time-sheets, work description, and invoices with service ticket numbers. Hernandez did not travel randomly to offshore rigs in search of work – a service ticket number was created and he was sent to a specific work site.

The terms of the master contract do not show that there was intent to ignore the location of the work in determining the site. The master contract does not specify the location of the work and nothing classified the work as maritime in nature or location. Hernandez was an offshore waste management operator and service technician. His job was to monitor, clean, and repair M-I equipment used for drilling mud. When he was injured, he was working on Thunder Horse, a stationary drilling platform 150 miles southeast of Louisiana on the outer continental shelf. Since Thunder Horse is stationary and Hernandez was assigned non-maritime work on it, the dispute arises on a site under the Act.

4.  *Maritime Law.*

M-I says that even if the dispute arose from an island, maritime law still applies because offshore-drilling service contracts are historically treated as maritime contracts. It says that since most of the services under the master contract involve the use of vessels, the contract is historically maritime. As an abstraction, that may be true. Usually, however, examples of maritime contracts involve work done on a barge or ship or mobile drilling rigs.[4]

Hernandez did not work on a boat. He worked on a stationary platform; the equipment he tended was on the island. He was not on the island to connect equipment there to other equipment aboard his employer's vessel. The ship was his means of commuting to the maintenance work he did on the legal island of Thunder Horse. He was parallel to people who ride the ferry from Staten Island to Manhattan for work.

Keeping drilling equipment in operation and mud flowing on an island is not traditional maritime activity.[5] Maritime law does not apply.

---

[4] *Davis & Sons, Inc., v. Gulf Oil Corp.*, 919 F.2d 313, 317 (5th Cir. 1990); *Jones v. Francis Drilling Fluids, Ltd.*, 613 F. Supp. 2d 858, 870–871 (S.D. Tex. 2009); *Fontenot v. Sw. Offshore Corp.*, 99-1559 (La. Ap.. 3 Cir. 07/05/00); 771 So. 2d 679, 684; *Demette v. Falcon Drilling Co., Inc.*, 280 F.3d 492, 501 (5th Cir. 2002).

[5] *Union Tex. Petroleum Corp.*, 895 F.2d at 1049.

5. *Conflict.*

Finally, the state law must not conflict with federal law. Since the Act is triggered, Louisiana law applies. The Louisiana Oilfield Indemnity Act – voiding indemnity agreements – is not inconsistent with federal law.[6]

6. *Conclusion.*

Because Hernandez was working on a stationary platform, doing non-maritime work., the Outer Continental Shelf Lands Act applies. Under the Act, the Louisiana law that invalidates indemnity provisions governs and the indemnity provision in the contract is unenforceable.

Signed on November 25, 2011, at Houston, Texas.

_____
Lynn N. Hughes
United States District Judge

---

[6] *Grand Isle*, 589 F.3d at 789; La. Rev. Stat. Ann. § 9:2780(A) (2011).